IN THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF WEST VIRGINIA, HUNTINGTON DIVISION

BEFORE THE HONORABLE ROBERT C. CHAMBERS, JUDGE

---o0o---

CLAUDE R. KNIGHT and CLAUDIA
STEVENS, individually and as
personal representatives of the
Estate of BETTY ERLENE KNIGHT,
deceased,
        Plaintiffs,
vs.                            No. 3:15-CV-06424

BOEHRINGER INGELHEIM
PHARMACEUTICALS, INC.,

        Defendant.
_____/

---o0o---

REPORTER'S TRANSCRIPT OF PROCEEDINGS

PRETRIAL CONFERENCE

TUESDAY, SEPTEMBER 18, 2018, 1:30 P.M.

---o0o---

For the Plaintiffs:    CHILDERS, SCHLUETER & SMITH
                        1932 North Druid Hills Road
                        Suite 100
                        Atlanta, Georgia  30319
                        BY:  C. ANDREW CHILDERS
                        and  RICHARD R. SCHLUETER

(Appearances continued next page...)

Reported by:    KATHY L. SWINHART, CSR
                Official Court Reporter
                (304) 528-2244

1                    APPEARANCES (Continued)

2

3     For the Defendant:

4
                    TUCKER ELLIS
5                   925 Euclid Avenue, Suite 1150
                    Cleveland, Ohio  44115
6                   BY:  JOHN Q. LEWIS

7
                    TUCKER ELLIS
8                   950 Main Avenue, Suite 1100
                    Cleveland, Ohio  44113
9                   BY:  MADELINE B. DENNIS

10
                    COVINGTON & BURLING
11                  One City Center
                    850 Tenth Street NW
12                  Washington, D.C.  20001
                    BY:  PHYLLIS ALENE JONES
13                  and  NICHOLAS HAILEY

14
                    JACKSON KELLY
15                  Post Office Box 553
                    Charleston, West Virginia  25322
16                  BY:  GRETCHEN M. CALLAS

17

18

19

20

21

22

23

24

25

1

```
1              HUNTINGTON, WEST VIRGINIA

2          TUESDAY, SEPTEMBER 18, 2018, 1:26 P.M.

3                       ---o0o---

4          THE COURT:  Good afternoon.

5          MR. CHILDERS:  Good afternoon, Your Honor.

6          MR. LEWIS:  Good afternoon, Your Honor.

7          THE COURT:  All right.  Do we have everyone here we

8    expect and needed?

9          MR. CHILDERS:  Yes, sir.

10         THE COURT:  All right.  I've gone over the amended

11   pretrial order.  It appears that the only thing the parties

12   identified as being a matter for the Court to decide prior to

13   trial were the deposition designations; is that right?

14         MR. CHILDERS:  That's correct, Judge.  And we are

15   still working through those and communicating with your law

16   clerks.  We would like a little bit more time today, and we're

17   making progress to reduce the amount of things we have to ask

18   you to rule on.

19         THE COURT:  Well, as anxious as I am to redo

20   deposition excerpts, I'll certainly wait and give you a little

21   more time to see if you can resolve them.

22         At this point, do you have any sense of the number or

23   the volume?  I'd like to have some idea, if things don't work

24   out, about how much I'm going to have to devote to this.

25         (Off the record.)
```

2

1      THE COURT:  Please make sure your microphones are on

2   and use them.  The acoustics are not very good in this

3   courtroom.

4      MR. CHILDERS:  I'm not sure if I could estimate that

5   for you.  There are a total of 13 depositions, and I don't --

6   actually there is more than that.  You guys have some as well.

7   Probably 15 to 18 depositions.

8      I don't -- it's hard for me to tell you how many

9   objections there --

10      THE COURT:  Well, and so are you talking about 13 or

11   more depositions of which there are a limited number of

12   excerpts that are at issue?  Or are you talking about

13   something broader than just excerpts, questions and answers

14   here and there, or both?

15      MR. CHILDERS:  I'd say the ones that haven't been

16   discussed very broadly have objections.  The ones that we have

17   discussed have been very much narrowed down to --

18      THE COURT:  Great.

19      MR. CHILDERS:  -- some precise issues.

20      THE COURT:  Well, when do you expect to finish up with

21   whatever you can do by agreement?

22      MR. CHILDERS:  By early next week at the latest.

23      THE COURT:  Okay.  Well, I'd certainly like to have

24   whatever you can't resolve presented to the Court either at

25   the end of business on Tuesday or first thing Wednesday,

3

1    Wednesday morning.

2         And then at this point, how do you expect to tender

3    those matters to the Court?

4         Are you just going to hand us depositions and say

5    objections are at these pages and --

6         MR. CHILDERS:  I think we'd be open to however the

7    Court would prefer we do that, Your Honor.

8         THE COURT:  Well, it's hard for me to tell that until

9    I see some of them frankly.

10        MS. JONES:  Your Honor --

11        MR. CHILDERS:  That's how we have exchanged -- I'm

12   sorry.

13        We've exchanged them as here are the lines and pages

14   we object to --

15        THE COURT:  Okay.

16        MR. CHILDERS:  -- without the testimony attached.

17        MS. JONES:  Your Honor, good afternoon.  Phyllis

18   Jones.

19        I think from our perspective, many of the issues

20   related to the deposition designations, at least for the

21   company witnesses, fall into topical buckets.  So there are

22   certain issues that, once we have guidance from the Court on

23   the broader issue, we probably can sort out the actual page

24   and line.

25        So I think, from our perspective, what might be most

4

1    sensible is for us to make some kind of submission that

2    highlights what those buckets of issues are and then submit

3    something that actually gives you the more granular page and

4    line to the extent that that is useful to the Court.

5            THE COURT:  All right.  And when would you expect to

6    be able to do that?

7            MS. JONES:  Well, I think the timeline that

8    Mr. Childers has laid out and what Your Honor mentioned is

9    entirely feasible given the schedule that we're working on at

10   the moment.

11           THE COURT:  Okay.  Well, then may I expect that each

12   side will submit no later than let's say noon on Wednesday

13   whatever memoranda in support of your objections along with

14   the designation of the deposition by the name of the deposed

15   witness and then the specific pages and/or lines where the

16   objections are raised?

17           MS. JONES:  That's fine with us, Your Honor.

18           THE COURT:  And, you know, since I can only guess that

19   maybe it's going to turn out to be voluminous, I guess what

20   I'd like to do is have you go ahead and provide a hard copy of

21   that, at least for me.  It's a lot easier for me to work from

22   a hard copy than on the computer.  So I would like each side

23   to do that as well.

24           So then other than the deposition -- well, and then --

25   just to finish the thought on this before we move on.

5

1          So I'll -- once you submit those to me, I'll read

2     through them.  I'll try to rule on it as much as possible

3     during next week.  Certainly if there are areas where I need

4     argument, I guess we'll just have to wait and do that after we

5     get started.

6          We are picking a jury Monday morning, October 1st, so

7     we may have to deal with some of this when we have gaps or can

8     take a break from jury selection or the jury process.

9          All right?

10          MS. JONES:  That's fine, Your Honor.  Thank you.

11          THE COURT:  All right.  So then my deputy clerk gave

12     you all copies of the jury questionnaire.  I took what you

13     submitted, made some additions and changes to it, and sent it

14     out to -- I think we ended up with a net of about 87 jurors on

15     the panel who received this.

16          Yesterday was their deadline for responses.  And

17     today, just before I came in, the clerk's office brought me 67

18     of the 87 that were sent out.  67 have been returned.  She

19     indicated, the clerk downstairs indicated that she had pending

20     phone calls from a few people that she assumed were maybe

21     about this.  She's going to send another message to these

22     folks reminding them, those 20 who hadn't sent their

23     questionnaires back, that they need to do so immediately.

24          So my thought is that we'll probably see what we get

25     in the mail tomorrow.  And then after that, I'm going to

6

1    start -- or at that point I'm going to start going through

2    these.

3           As you can see from the questionnaire, the first

4    question deals really with an employment hardship or something

5    like that.  I feel like that is up to the Court's discretion

6    to resolve.  And so I'm going to go through these and examine

7    those who have some type of a hardship like that and determine

8    whether or not to excuse them.  So I may excuse them, I may

9    not.

10          Then the bulk of the other questions are obviously

11   matters that pertain to some knowledge or experience about

12   something that may well be relevant to the issues to be tried.

13   Those I don't intend to address at all at this point.  I think

14   those are matters that we will have to deal with when we do

15   jury selection.

16          So what I would expect to do is, by the end of this

17   week, excuse those individuals who have reported some

18   hardship.  And then with what is left, we will have a pool of

19   jurors who have completed the questionnaire and sent it in and

20   not been excused for a hardship.  And I intend to take some

21   number of those, probably 40 to 50, and have the clerk

22   randomly pick 40 to 50 of those by computer.  And those will

23   be the people who will be informed that they must be here on

24   October 1st at 8:30.

25          And when they assemble, we'll then start our usual

1   jury selection process.  We will provide to you copies of the

2   questionnaires submitted by the 40 or 50 that we have show up

3   here, and then we'll conduct voir dire.

4        I know each side has offered additional and proposed

5   voir dire questions.  I've looked through them, and I don't

6   see much at issue.  A lot of it is already addressed in this

7   questionnaire, but we'll be able to do more follow up and

8   individual questioning of jurors as necessary from -- on

9   Monday.  So that is generally the way I expect to handle it.

10       In our clerk's office, when jurors assemble -- and

11  I've said 40 to 50.  I just haven't had a chance to think

12  through how many people as jurors I want to show up here, but

13  it will be probably in that range.

14       And then once they're here, the clerk's office assigns

15  each of them a random number, No. 1 through 40 or whatever the

16  number is, and they're given stickers to wear on their

17  clothing that identifies them by that number.  And then when

18  we're ready here, the clerk's office will send them up, and

19  they'll be seated in numerical order here in the courtroom,

20  and then that's when I'll conduct the voir dire.

21       Hopefully by about next Wednesday, if not sooner, I

22  will forward to counsel proposed preliminary instructions and

23  proposed voir dire and give you a chance to respond to that

24  and, if necessary, we can take it up the morning we start the

25  trial.

8

1          I don't know if you all asked me before, so I'll tell

2      you my usual approach is that I'll do the voir dire here in

3      the open courtroom.  Then it's typically the case that we have

4      individual follow up for a number of jurors.  And so my

5      general practice is to reconvene in the conference room and

6      literally go in numerical order to ask counsel if there is

7      individual follow up that they believe we should conduct in

8      private in the conference room.  We will call the juror in and

9      do that.

10          I usually let the lawyers participate in that follow

11      up as long as they're reasonable and fair questions.  But

12      we'll go through all of that individual voir dire and then

13      after that do strikes.

14          I like to use all of the jurors in that once I've

15      excused jurors for cause, we'll reduce down to some number,

16      and then I'll divide the -- we're going to need eight jurors,

17      and so -- you know, we don't use alternates in federal court,

18      all jurors participate.  We have to have six to go to verdict

19      unless the parties stipulate to the contrary.  So as a result,

20      we'll have eight jurors.  So I'll divide up the number of

21      strikes remaining and maybe give you more strikes than usual

22      just depending on how many jurors have been excused for cause.

23          So any questions about any of this at this point?

24          MR. CHILDERS:  I apologize for not knowing this.

25      What's the usual number of strikes?

1          THE COURT:  Well, I think the rule provides -- is it

2     six or eight?

3          THE CLERK:  Six.

4          THE COURT:  Six, isn't it, or seven?

5          I'm not sure.  I'll look it up.

6          MR. CHILDERS:  Okay.

7          THE COURT:  I'm pretty confident that you'll get more

8     than that.

9          MR. CHILDERS:  Okay.

10          THE COURT:  Because I think because of the medical

11     issues, my guess is we're going to have a lot of folks who

12     have reported on these questionnaires that they know or are

13     someone who has used a blood thinner or something similar or

14     have some other relevant experience.  So my guess is that

15     we'll have a lot of people who have questions like that, and

16     some may be excused, but many may remain, and you'll have to

17     decide whether to use strikes or not.

18          But I'm pretty sure -- we usually have more than the

19     minimum number for the strikes for peremptory challenges by

20     each side, so you'll probably get maybe significantly more.

21     And in a civil case, I'll just divide them between the two

22     sides.

23          Anything else than what I've discussed so far?

24          Yes, sir.

25          MR. LEWIS:  Good afternoon, Your Honor.  John Lewis.

10

1    Just a couple questions.

2              So if I understand correctly, the parties basically

3    strike down to eight jurors --

4              THE COURT:  Right.

5              MR. LEWIS:  -- essentially?

6              Okay.  And reverse engineer the number of

7    peremptories?

8              THE COURT:  Yes.

9              MR. LEWIS:  Okay.  And then on the questionnaires, do

10   we get those before the morning of jury selection?

11             THE COURT:  Yes.  Yes.

12             My plan would be that I'm -- my goal is to go through

13   these questionnaires on or before Friday, excuse for hardship

14   any of those that the Court deems appropriate, and then that

15   will leave us with a pool of 60 or 70 or 80.  And then I'll

16   have the clerk's office downstairs draw from that pool 40 or

17   50 or some number.  And once we do that, those will be the

18   people who we will have identified and confirmed to them that

19   they must show up.  And at that point, I think by the first of

20   the week, we would be able to send to you the names and the

21   questionnaires.

22             MR. LEWIS:  Okay.  Great.  Thank you.

23             THE COURT:  You'll have those in advance of starting

24   the jury selection --

25             MR. LEWIS:  Thank you.

11

1              THE COURT:  -- well before.

2              MR. LEWIS:  Thank you, Your Honor.

3              THE COURT:  Okay?

4         I know there had been some talk or discussion maybe

5    about logistics for counsel.  At this point, I think we can

6    offer you two rooms.  Unfortunately we just don't have a lot

7    of space in this building, and there was no thought at the

8    time of the courthouse being constructed here to have counsel

9    rooms and so forth, but we've got an option that I think would

10   work quite well.

11        So down the hall from here, we have a conference room.

12   We use it as a witness room, so sequestered witnesses are

13   often seated in there, and that is very close to the

14   courtroom.  So what I'm inclined to do is to say that the

15   party who is putting on their case, plaintiffs first, would

16   have use of that room as their staging room, so to speak,

17   while putting on their case, how many ever days that takes.

18        And then downstairs, the clerk's office tells me they

19   have a training room that has tables.  Obviously it's got

20   electrical outlets and perhaps even computer cables and stuff,

21   but there is nothing in there.  There is no equipment in there

22   at all.  So I would -- we're going to confirm this, but I'm

23   likely to say that the party not putting on their case can use

24   that as their staging room.

25        And then it looks to me like witnesses are not going

12

1    to be really numerous, and that they're going to be examined

2    at length, so I don't think we're going to have six or eight

3    people as witnesses sitting around waiting to testify.  So

4    I'll figure out some other place for witnesses to be told to

5    wait.

6              Will the parties expect the witnesses to be

7    sequestered or do you care in this case?

8              MR. CHILDERS:  I don't think there are that many live

9    witnesses that it's really going to matter.

10             THE COURT:  Well, think about it.  I don't need to

11   address that yet.  We've got literally places down the hall

12   where there is some seating out in the hallway or other

13   places.  So if we're just going to have one or two witnesses

14   every few hours, then it shouldn't be a problem not having a

15   conference room for them to wait in.  But I'll let you know.

16   And if you don't care, then they can sit in the courtroom.

17             MR. CHILDERS:  Okay.

18             MS. JONES:  Your Honor, may I just raise one other

19   mundane question?

20             To the extent that we wanted to be able to bring lunch

21   into the courtroom, is that permitted or do we need --

22             THE COURT:  Well, not into the courtroom.

23             MS. JONES:  Not the courtroom, I apologize.  The

24   courthouse.

25             THE COURT:  Yes, you can do that.  And we would expect

13

1    you to just take it to whichever one of these two staging

2    rooms you're occupying at the time.

3            MS. JONES:  Okay.  Thank you.

4            MR. CHILDERS:  And the staging rooms, are we allowed

5    to leave things there overnight or do we need to take it out?

6            THE COURT:  No, I think you can leave things there

7    overnight for the duration --

8            MR. CHILDERS:  Okay.

9            THE COURT:  -- of your occupancy of it at least.

10           So we've discussed jury selection and voir dire.

11           I also will prepare preliminary instructions.  It's

12   generally very simple.  The first part is boilerplate language

13   that simply tells the jury that they're the triers of fact,

14   how to judge witnesses, et cetera.

15           And then we provide a relatively brief statement of

16   the elements of the claims and the elements of the defenses,

17   without elaboration or argument, just to give the jury a grasp

18   of the issues that they'll be expected to consider as they

19   hear the testimony.  So I will expect to have that out to you

20   by the middle or end of next week at the latest with the

21   proposed voir dire, and then we can take up any objections.

22           You've both submitted proposed instructions Friday, so

23   I haven't looked at them yet.  From looking at the amended

24   pretrial order, there doesn't seem to be a great deal of

25   argument, maybe with one or two exceptions, about what the

14

1    claims are and the elements and so forth.  So I expect it to

2    be a generalized statement for the jury.  I don't want to get

3    into a very detailed or elaborate instruction about the claims

4    and defenses before the jury has even heard openings or any

5    evidence.  So that's my usual approach to it.

6         So anything else on your all's agenda that -- you're

7    both, I take it, aware you have to contact our IT people and

8    go through the process of figuring how to use this equipment?

9    None of us here are troubleshooters.  We don't use it, we just

10   watch it, so don't expect us to help you.  We can't save you

11   if you are in front of the jury and struggling to get

12   something to play.

13        If you expect that you've got something that is

14   complicated, make sure that the IT people you talk to know

15   about it.  And if you think for some reason that, you know,

16   there is some concern that maybe we need to have somebody from

17   IT available, we can look into that.  But otherwise, those

18   people are in Charleston, an hour away, and so they are not

19   going to be here magically unless we tell them to expect to be

20   here.  So if that's a possibility, we could ask them to make

21   sure somebody is quickly available.

22        MS. JONES:  Your Honor, just a couple of things from,

23   I guess, our side.

24        One is, we had filed a motion to bifurcate that I --

25        THE COURT:  I was going to take that up next.

15

1          MS. JONES:  -- think was unopposed, but I --

2          THE COURT:  There was no response filed, as I recall.

3     And I think we discussed it briefly before, so I'm glad you're

4     bringing it up now.

5          I take it that the plaintiffs have no objection to

6     bifurcating the punitive damage claim?

7          MR. CHILDERS:  That's correct, Your Honor.  That's my

8     understanding how you have to do it.

9          THE COURT:  Right.  So I will grant the motion.  I

10    will consider the punitive damage issue to be bifurcated from

11    the trial on the merits.  It seems to me by doing that we

12    eliminate the need or relevancy in the plaintiffs' case in

13    chief on liability as to the financial standing of the company

14    and matters to the relevance only of punitive damages.

15         You have tried a bunch of these cases.  I haven't.  So

16    if you think there are specific areas of evidence that may be

17    arguably inappropriate for the liability phase, I would expect

18    the defense to raise that with me and let me know and let the

19    plaintiffs know.  But, generally speaking, it's just a matter

20    of bifurcating the issue and some of the evidence pertaining

21    to the financial standing of the defendant.

22         Okay.  And you had something else?

23         MS. JONES:  One other issue, Your Honor.

24         You might have seen in the PTO that we had agreed on

25    certain arrangements for exchanging information about

16

1    exhibits --

2              THE COURT:  Right.

3              MS. JONES:  -- to be used, exchanging opening and

4    closing slides.

5              THE COURT:  Right.

6              MS. JONES:  Those are basically the protocols we've

7    used in the prior trials for these cases, but we wanted to be

8    sure that we had a sense from Your Honor if that is acceptable

9    to you.  And if there are objections or issues that need to be

10   worked out, how you would like us to approach that.

11             THE COURT:  Generally speaking, I'm willing to ratify

12   the agreement that counsel have reached and expressed in the

13   pretrial order.  I don't have any issue with any of it.  If

14   there is something that comes up that one party believes

15   should excuse them from or result in a modification of the

16   requirement, I would expect you to bring that to the Court's

17   attention if you can't work it out.

18             MS. JONES:  And to the extent that we have issues

19   related to exhibits in connection with that process, are those

20   things that Your Honor would prefer that we raise -- obviously

21   as soon as we know about them, but -- in the morning before

22   court begins?

23             THE COURT:  Yes.  Yes.

24             MS. JONES:  Okay.  Thank you.

25             THE COURT:  You know, generally speaking what I try to

17

1    do with the jury is basically a nine-to-five day.  If it seems

2    that there are going to be a lot of things that need to be

3    taken up in the morning before the jury, you know, I would

4    consider bringing the jury in a little bit later, 9:30 or

5    10:00.  But I expect you to bring those matters to the Court's

6    attention.

7              Anything else on your all's minds that you need to

8    talk about?

9              MR. CHILDERS:  Your Honor, do you anticipate that

10   we'll do opening statements on the Monday that we select the

11   jury, or do you expect that will take all day?

12             THE COURT:  Well, you know, generally even in some of

13   the lengthier, more complicated trials that we've done here,

14   we've had the jury impaneled and sworn in time to do opening

15   statements on the first day.  And I would certainly like to do

16   that, if possible, so I would expect counsel to be prepared

17   for that.

18             I guess maybe it's unrealistic to think that you would

19   be able to present any evidence, but it would sure be good if

20   the plaintiffs have some evidence that they could present on

21   the first day, if we get to that point.

22             It's hard to tell how long this will take.  You know,

23   I expect to have a little bit better idea after I've gone

24   through these questionnaires and see how many jurors have some

25   experience or knowledge with respect to the medical side of

18

1    this case, and that will tell us a lot about how extensive

2    we're going to have to go into this, how extensively we're

3    going to have to go into this with the jurors.  I think that's

4    going to be the key to how long it takes to do the voir dire.

5              MR. CHILDERS:  And for the openings, is it an hour

6    each side, Your Honor?

7              THE COURT:  I am usually willing to give counsel what

8    you all work out.

9              I also do not use a stopwatch for these things.  I

10   prefer to let the lawyers give their statements completely and

11   only start reminding people when they're getting close to

12   their time, and then I don't like to cut off people.  I don't

13   have the Court of Appeals lights here that tell you to sit

14   down.  So I would expect counsel to agree upon a time, and

15   then I'll follow that.  And only when you get close to that

16   time am I going to do anything, and then I'll give you some

17   signals to let you close your thoughts so that it doesn't just

18   abruptly end.

19             MR. CHILDERS:  Do you permit parties to split

20   openings, closings as far as two different lawyers to speak to

21   the jury as long as they stay within the time constraints?

22             THE COURT:  If you ask me in advance, and if that's

23   what you're asking, then the answer would be yes.

24             MR. CHILDERS:  I'm not certain that we will, but we

25   did previously, and we may do that again if that's okay with

19

1    Your Honor.

2            THE COURT:  I would permit either side to do that.

3            MR. CHILDERS:  Thank you, Your Honor.

4            MR. LEWIS:  Just had one other thing, Your Honor.

5            THE COURT:  Yes.

6            MR. LEWIS:  It really kind of relates to process, but

7    we've flagged in the pretrial order an evidentiary issue

8    related to medical records and the absence of some medical

9    records.

10            THE COURT:  Right.

11            MR. LEWIS:  Really not to have that issue decided

12    right now, but more of a process question.

13            When we have these types of issues, does the Court

14    prefer that we sort of raise them ahead of time?

15            THE COURT:  Yes.

16            MR. LEWIS:  I mean, I see that issue being something

17    that we might be talking to you about real early on in the

18    case.

19            THE COURT:  Absolutely.

20            MR. LEWIS:  Okay.

21            THE COURT:  Especially something like that where it

22    may affect a number of different witnesses.

23            MR. LEWIS:  Right.

24            THE COURT:  You know, I would much prefer to deal with

25    it in advance.

20

1        MR. LEWIS:  Before the jury gets in the box and --

2        THE COURT:  Yes.

3        MR. LEWIS:  Okay.  I figured, and so I just wanted to

4   make sure that's okay.

5        THE COURT:  I know there's also an exchange in there

6   about some of the defendant's documents and their

7   admissibility under 801(d) and --

8        MR. LEWIS:  Right.

9        THE COURT:  -- what that means.

10        So if that is a matter that you folks can't work

11   out --

12        MR. LEWIS:  Right.

13        THE COURT:  -- then I would like that --

14        MR. LEWIS:  Brought to your attention ahead of time.

15        THE COURT:  -- brought to my attention as early as

16   possible to hear arguments and resolve it.

17        MR. LEWIS:  Fair enough.  And we'll continue to work

18   on that over the next couple of weeks to see if we can't

19   resolve them.  And if not, we'll let you know.

20        THE COURT:  You know, usually I don't start trials

21   until Tuesday, and one of the reasons I generally do that

22   is --

23        MR. LEWIS:  Oh, okay.

24        THE COURT:  -- it's really good to have Monday and

25   have the lawyers here to do all of these things the day before

21

1    trial.

2              MR. LEWIS:  Right.

3              THE COURT:  But given the length of this case, I was

4    concerned that we needed to use every day of the week, so we

5    don't have that benefit.

6              And I really don't want to have to drag you folks back

7    here next week.  I know -- I want to find out what has

8    happened in your recent litigation, but knowing you're going

9    to be here for a long time, I'd rather not make you come in

10   here sometime late next week and have to do something if we

11   can figure out a way to do it after you're already here and

12   planning to be here.

13             So --

14             MR. LEWIS:  I think --

15             THE COURT:  -- whatever you can't work out about those

16   things let's talk about, and maybe -- if nothing else, maybe

17   we'll assume that we'll have a little bit lengthier session

18   Monday after we pick a jury and let them go before we start

19   getting into evidence, and I can hear argument about these

20   things, if necessary.

21             MR. LEWIS:  Right.  Okay.  Thank you, Your Honor.

22             MR. CHILDERS:  The only thing on that particular

23   issue, Your Honor, I think the issue they've raised will

24   impact what we can and can't say in our opening statement.

25             And so --

1          THE COURT:  Which one are we talking about now, the

2     medical records?

3          MR. CHILDERS:  About the medical records --

4          THE COURT:  Whether there was a prior bleeding

5     incident?

6          MR. CHILDERS:  Yes, sir.

7          THE COURT:  Okay.

8          MR. CHILDERS:  And so I'm not sure how we could wait

9     until --

10         THE COURT:  Well, fine.  I don't disagree.  I know you

11    indicated you had three or four witnesses, the doctors who you

12    expected to elicit testimony from, and it doesn't surprise me

13    if you need to go over this.

14         Perhaps what we ought to do is have the parties file

15    something.  And I guess the way I see it, the defense is

16    trying to restrict plaintiffs' evidence, so I think the burden

17    is on the defendant to assert its objection.  And so I'd like

18    you to file something and then have a fairly quick response

19    and reply.  And then I can at least look at it next week and,

20    if not rule on it, maybe be prepared to deal with it pretty

21    quickly on Monday.

22         MR. LEWIS:  That's fair.

23         MR. CHILDERS:  That's fine.

24         MR. LEWIS:  We'll get something on file.

25         MR. CHILDERS:  Absolutely.

23

1          THE COURT:  When would you expect to --

2          MR. LEWIS:  Early next -- early next week?  Too late?

3          THE COURT:  Well, you know, honestly if it's a matter

4    you've already identified, I'd rather you file something this

5    week --

6          MR. LEWIS:  Okay.

7          THE COURT:  -- so that I can make them respond pretty

8    quickly.

9          MR. LEWIS:  Right.  Right.

10         THE COURT:  So today is Tuesday.  If you could file

11   something by the end of business Thursday?

12         MR. LEWIS:  Okay.

13         THE COURT:  I'll give you until the end of business

14   Monday to respond?

15         If you see it, and you think that there is some reason

16   you need a little longer, you know, I'm probably okay with

17   getting something like on Tuesday, but I think we have to do

18   this pretty quickly.

19         MR. CHILDERS:  If I could beg for Tuesday only because

20   this coming weekend is the last -- I'm going to spend it with

21   my family.

22         THE COURT:  All right.  We'll do that, then.

23         So why don't you file it by the end of business, by

24   5:00 Thursday; response by 5:00 next Tuesday.

25         And then I'll give you 48 hours to reply?

24

1          MR. LEWIS:  Fair enough.

2          THE COURT:  All right.  That will get it to me by --

3          MR. LEWIS:  The end of next week.  Okay.

4     Thank you, Your Honor.

5          MR. CHILDERS:  And I would like to address one thing

6     if I could.

7          In sort of trying to narrow the issues that we've

8     raised in the deposition objections and sort of figuring out

9     the difference in this case from some of the others that

10    you've heard -- this is the only case with a different dose of

11    Pradaxa -- I believe we're going to finish before the three

12    weeks is over, and I'm certainly endeavoring to make that

13    happen.

14         So if the Court would like us to use Monday to address

15    all these things, I don't think that's going to cause us to go

16    past our three-week time period.  I think we would still end

17    before three weeks.

18         THE COURT:  And not have the jury here on a Monday?

19         MR. CHILDERS:  Correct.

20         And quite frankly, just because of the IT folks that

21    we use to help us with all this, if we could have that actual

22    day here in court with Your Honor to make those rulings, I

23    think that would make the trial go a lot smoother.

24         THE COURT:  What do you all think?

25         MS. JONES:  We have no objection to that if that is

25

1   acceptable to Your Honor.  With the understanding that we

2   expect plaintiffs' case will move quickly, and we will

3   certainly endeavor to move quickly as well, then I think it's

4   probably fine.

5           THE COURT:  All right.  Well, I think we'll do that,

6   then.  I will have to send you some confirmation later today

7   from my law clerk.  I'll talk with the clerk's office

8   downstairs.  I don't think it's a problem.

9           I know that in order to get -- frankly to get these

10  questionnaires out and back, the 87 people who received them

11  were told you're to be here October 1st, so those people are

12  already on notice to be here that Monday.  I don't see that

13  it's a problem for us now to tell them Tuesday.  And in any

14  event, we always have the call-in system, which we make them

15  call in in advance, the day before whenever they are supposed

16  to show up to make sure that they will still be here.

17          So I don't think it's a problem, but let me get back

18  with my staff before I confirm that.  But if that works, then

19  we'll do a quick order that just says -- could we start at

20  10:00 on Monday morning to hear whatever I've got to hear?

21          MR. CHILDERS:  That would be great for --

22          THE COURT:  All right.  So we'll assume that's the

23  case, but I'll confirm it if we can.  We'll do an order that

24  schedules hearing argument on any motions or other matters on

25  Monday at 10:00 and jury trial starting the next day.

26

1          MR. CHILDERS:  Thank you, Your Honor.

2          THE COURT:  That would work real well for us, too.  I

3    wanted to make sure we had enough days for the trial.

4        (Off-the-record discussion with law clerk.)

5          THE COURT:  My clerks noted for me while we know you

6    have filed your proposed jury instructions, if you can provide

7    via e-mail a Word document with your instructions.  They

8    should go to Blake, so we'll make sure we give you the

9    address, the e-mail address here in just a few minutes.  But

10   that would be helpful, too, so we can cut and paste with it

11   much more effectively.

12         Blake, why don't you just give them your number.

13         MR. CHILDERS:  I think we have it, Your Honor.  We

14   have e-mailed with him already.

15         THE COURT:  Okay.  Then Blake is the one to send them

16   to.

17       (Off-the-record discussion with courtroom deputy.)

18         THE COURT:  My courtroom deputy wants to have a brief

19   discussion with you after we conclude about exhibit lists.

20   And as I understand it, what you've told me in the pretrial

21   order is that you expect to do an exhibit notebook at the end

22   of the evidence, a joint notebook?

23         MS. JONES:  That's what we've done in the prior

24   trials, but we're obviously happy to do whatever the Court

25   prefers.  But in the prior trials, we've had a set of all of

27

1    the exhibits that were admitted.

2         THE COURT:  Yeah, I think that would be real helpful.

3         As I've read that, you don't intend to provide

4    notebooks to the jury during the presentation of evidence.  I

5    agree with that, that that would be helpful.

6       (Off-the-record discussion with courtroom deputy.)

7         THE COURT:  And then we also expect you to file a list

8    of your exhibits.  That will help us keep track of them and

9    properly identify them.

10        And then because we expect these to be voluminous

11   exhibits, to reduce them to a disk or disks at the end of the

12   trial to submit to the clerk's office so that they can use

13   disks rather than have to scan documents into the docket

14   report.

15        And if you need an explanation for that, Terry will

16   have to give it to you.

17        MR. CHILDERS:  You're not speaking of all the

18   exhibits, just the ones --

19        THE COURT:  The ones that are admitted.

20        MS. JONES:  And for the list of exhibits that we're

21   filing, would it be helpful to have a Word version of that

22   sent as well by e-mail?

23        THE CLERK:  Yes.  We can talk about the logistics of

24   what it should look like afterwards.

25        MS. JONES:  Okay.

28

 1          THE COURT:  Do you have anything else on your lists of

 2    matters to be discussed?

 3          MS. JONES:  Does Your Honor prefer to have a book of

 4    the exhibits that are being used with a specific witness, hard

 5    copy exhibits to hand up to the bench?

 6          THE COURT:  I like to have it.

 7          MS. JONES:  Okay.  We can certainly do that.  I just

 8    wanted to -- sometimes judges say don't give me any paper at

 9    all.

10          THE COURT:  Well, no, that is helpful.  It is easier

11    for me to have something separately so I don't have to handle

12    the actual exhibits if I need to see something.

13          MS. JONES:  Yeah.

14          THE COURT:  Because we can lose them or get them

15    confused or mixed up quite easily passing them back and forth.

16          MS. JONES:  Okay.

17          THE COURT:  Okay?

18          MR. CHILDERS:  In the prior trial, we've premarked all

19    of the exhibits.  Do you want us to do that again?  That makes

20    them somewhat out of order.  Is that okay, though, with the

21    Court?

22          THE COURT:  Out of order --

23          MR. CHILDERS:  It's not going to be Exhibit 1, Exhibit

24    2, Exhibit 3 because they are premarked with specific numbers.

25          THE COURT:  I think it helps to premark just because

29

1    it keeps it straight, and we have an easily identified list

2    that we can go by that tells us what each one is.  And it

3    doesn't trouble me that you're presenting them out of

4    numerical order.

5              MR. CHILDERS:  Okay.  Great.  Thank you.

6              THE COURT:  You all are getting along so well, I just

7    can't believe you haven't settled this case.

8              What's happening in these recent trials?  How many of

9    these cases have you tried since we were here back in the

10   spring?

11             MR. CHILDERS:  None.

12             THE COURT:  None?

13             MR. CHILDERS:  There is one underway right now in

14   Connecticut, but they just started.

15             THE COURT:  Oh, really?

16             MR. CHILDERS:  Yes, sir.

17             THE COURT:  I thought there were some scheduled in

18   August.

19             MR. CHILDERS:  We had a trial scheduled in Columbus,

20   Georgia in August, and we found out in July that the

21   courthouse was going to be under renovation or was going to

22   still be under renovation.  I think they thought it was going

23   to be finished earlier.  They couldn't bring juries into the

24   courtroom, so we've been reset for December 3rd.

25             THE COURT:  Okay.  I take it still no change in the

30

1    settlement posture of the parties?

2            My recollection was the defense had stated that the

3    client was unwilling to settle these cases or this case in

4    particular.  Is that still the case?

5            MS. JONES:  I think we're not -- we're not in a

6    different position than we were before, Your Honor.

7            THE COURT:  Okay.  Well, all right.  Is there anything

8    else that we need to take up today?  If not, thank you all for

9    being here.

10           And let us know when you have reached whatever

11   resolution you can on these deposition designations so we know

12   when to expect that, but at the latest the time frame that we

13   discussed.

14           If there is nothing further, we stand adjourned.

15           MR. CHILDERS:  Thank you, Your Honor.

16           MS. JONES:  Thank you, Your Honor.

17           THE COURT SECURITY OFFICER:  All rise.  This honorable

18   court will be adjourned.

19                 (Proceedings were concluded at 2:05 p.m.)

20                            ---o0o---

21

22

23

24

25

1    CERTIFICATION:

2            I, Kathy L. Swinhart, CSR, certify that the foregoing

3    is a correct transcript from the record of proceedings in the

4    above-entitled matter as reported on September 18, 2018.

5

6

7    September 24, 2018
     DATE

8

9    /s/ Kathy L. Swinhart
     KATHY L. SWINHART, CSR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25