# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

CLAUDE R. KNIGHT and
CLAUDIA STEVENS, individually
and as Personal Representatives of
the Estate of Betty Erelene Knight, deceased,

        Plaintiffs,

v.              CIVIL ACTION NO. 3:15-6424

BOEHRINGER INGELHEIM
PHARMACEUTICALS, INC.

        Defendant.

## AMENDED MEMORANDUM OPINION AND ORDER

   Pending before the Court is Defendant's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial. ECF No. 225. In its motion, Defendant argues that it is entitled to judgment as a matter of law on Plaintiffs' fraud claim, as well as Plaintiffs' claim for punitive damages. *See id.* at 1. Alternatively, Defendant asks this Court to order a new trial on all claims. *See id.*

   Defendant argues that it is entitled to judgment as a matter of law on Plaintiffs' fraud claim for three reasons: (1) the claim is preempted; (2) there is no evidence that Mrs. Knight read or relied on the Medication Guide; and (3) there is insufficient evidence to support a fraud claim based on any other communication from Defendant to Mrs. Knight. *See id.* Defendant next argues that it is also entitled to judgment as a matter of law on Plaintiffs' claim for punitive damages because, for the reasons stated above, predicate liability does not exist, and even if predicate liability does exist there is insufficient evidence to support a finding for punitive damages. *See id.*

Finally, Defendant argues that, if this Court does not grant its motion for judgment as a matter of law on Plaintiffs' fraud claim, it should order a new trial on all claims because the jury delivered an inconsistent verdict. *See id.* at 2.

The parties have fully briefed the issues and the motion is now ripe for adjudication. As explained below, the Court **DENIES** Defendant's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial.

**I. Background**

Both the factual and procedural background of this case are extensive. Thus, the Court will only briefly explain how the current motion has come before it.[1] This case is one in a series of product liability suits brought around the country, in which plaintiffs have claimed that they were harmed due to allegedly defective aspects of Pradaxa, a drug created and sold by Defendant. *See generally Chambers v. Boehringer Ingelheim Pharmaceuticals, Inc.*, No. 4:15-CV-00068 (CDL), 2018 WL 849081 (M.D. Ga. Jan. 2, 2018); *Warren v. Boehringer Ingleheim Pharmaceuticals Inc.*, No. 1:16-cv-01326-SEB-DML, 2017 WL 3970666 (S.D. Ind. Sept. 8, 2017). In their complaint, Plaintiffs asserted various causes of action against Defendant stemming from its allegedly defective drug and its warnings, or lack thereof, which possibly damaged their mother, Betty Knight. *See Compl.*, ECF No. 1. After over three years of litigation, trial began on October 3, 2018. ECF No. 166. At the close of Plaintiffs' case-in-chief, Defendant moved for judgment as a matter of law on all of Plaintiffs' claims. *See Def.'s Mot. for Directed Verdict*, ECF No. 178. Defendant's motion was denied. *See* ECF No. 218. On October 17, 2018, trial concluded, and the jury was instructed on five claims: strict liability failure to warn, negligent failure to warn, breach of express warranty, breach of implied warranty, and fraud. *See* ECF No. 208; ECF No. 221, at 20–40.

---

[1] A more comprehensive overview of this case can be found in a previous order. *See* ECF No. 118.

Later that same day, the jury returned its verdict, finding that Defendant was not liable for strict liability failure to warn, negligent failure to warn, breach of express warranty, or breach of implied warranty. *See Jury Verdict Form*, ECF No. 214, at 1. However, based on the same failure to warn evidence, the jury found Defendant liable for fraud. *See id.* at 2. The jury also found that, absent Defendant's wrongful conduct, Mrs. Knight would not have taken Pradaxa, and that Pradaxa proximately caused Mrs. Knight's injuries, but not her death. *See id.* The jury awarded $50,000 in economic damages, $200,000 in non-economic damages, and $1,000,000 in punitive damages. *Id.* at 3; ECF No. 216. Significantly, Defendant made no objection to any inconsistency in the verdict before the jury was dismissed. On November 14, 2018, Defendant filed its Renewed Motion for Judgment as a Matter of Law, or in the Alternative, Motion for a New Trial. ECF No. 225.

## II. Standard of Review

Federal Rule of Civil Procedure 50(b) states that a Court may "direct the entry of judgment as a matter of law" upon post-trial renewal of a motion for judgment as a matter of law. Fed. R. Civ. P. 50(b). Judgment as a matter of law is appropriate when, "without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." *U.S. ex rel. DRC, Inc. v. Custer Battles, LLC*, 562 F.3d 295, 305 (4th Cir. 2009) (citation omitted). The movant is entitled to judgment pursuant to Rule 50(b) "if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." *Wheatley v. Wimico County, Md.*, 390 F.3d 328, 223 (4th Cir. 2006) (citation omitted). The Court reviews "the evidence in the light most favorable to the nonmoving party" in making this determination. *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 490 (4th Cir. 2005).

## III. Discussion

As stated above, Defendant argues that it is entitled to judgment as a matter of law on Plaintiffs' fraud claim as well as Plaintiffs' punitive damages claim. *See Mot. for J. as a Matter of Law*, ECF No. 225, at 1. Further, Defendant argues that, if this Court denies its motion for judgment as a matter of law on Plaintiffs' fraud claim, this Court should order a new trial on all claims asserted against it in the complaint. *See id.* at 2. The Court will address each argument in turn.

### 1. Motion for Judgment as a Matter of Law—Fraud Claim

Defendant argues that it is entitled to judgment as a matter of law on Plaintiffs' fraud claim for three reasons. First, Defendant asserts that Plaintiffs' fraud claim was "barred by the Court's ruling that federal law preempts any claim premised on the Medication Guide." *See Mot. for J. as a Matter of Law*, at 1. Second, Defendant argues that "Plaintiffs did not prove by clear and convincing evidence that Mrs. Knight ever read and relied on the Medication Guide." *Id.* Third, and lastly, Defendant asserts that "Plaintiffs did not demonstrate clear and convincing evidence to support a fraud claim based on any other communication by BI to Mrs. Knight." *Id.* For the reasons below, the Court disagrees with each of Defendant's arguments, and finds that Defendant is not entitled to judgment as a matter of law on Plaintiffs' fraud claim.

#### A. Whether Plaintiffs' Fraud Claim Is Preempted

Federal preemption law has no bearing on Plaintiffs' fraud claim. Federal preemption law states that a party cannot be held liable for failing to satisfy state duties when the party "cannot satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the exercise of judgment by a federal agency…." *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 623–24 (2011). In this case, the Court previously held that federal law preempted any

claim by Plaintiffs *based on alleged defects in the Medication Guide*. *See* ECF No. 225-8, at 7–8. The Court reached this conclusion because the FDA regulations make clear that a Medication Guide cannot be changed without the Federal Government's permission. *See* 21 C.F.R. § 314.70(b); 21 C.F.R. § 208.24(a).

Defendant now argues that this holding necessarily should have terminated Plaintiffs' fraud claim because "the Medication Guide was *the only* communication between BI and Mrs. Knight." *See Mem. in Supp. of Mot. for J. as a Matter of Law*, ECF No. 226, at 13 (emphasis added). In fact, Defendant claims that this fact is "undisputed." *See id.* This assertion is erroneous. While it may be undisputed that Defendant never technically *sent* any *warning* other than the Medication Guide to Mrs. Knight, and that Defendant never provided any other information *directly* to Mrs. Knight,[2] these facts do not establish that Defendant never *communicated* to Mrs. Knight indirectly through other individuals. It is through this logical fallacy that Defendant reaches the faulty conclusion that "any allegation that BI committed a fraud by inaccurately or incompletely describing Pradaxa's risks must rest upon the warnings in the Medication Guide." *See Mem. in Supp. of Mot. for J. as a Matter of Law*, at 13. Contrary to Defendant's assertion, Plaintiffs' fraud claim could have also rested upon warnings, or the lack thereof, in the physician label or television advertisements. To be clear, whether there is enough *evidence* to support a finding of fraud based on either the physician label or television advertisement is a separate question that is addressed in Section C below. However, the existence of that very question is enough to strike down Defendant's argument that this Court's preemption ruling regarding the Medication Guide, on its own, requires Plaintiffs' fraud claim to be preempted.

---

[2] *See* ECF No. 225-1, at 10.

### B. Whether There Was Reliance on the Medication Guide

For the same reasons stated above, whether Mrs. Knight relied on the Medication Guide is irrelevant to the extent that preemption bars a claim based on the Medication Guide. Thus, the only relevant question regarding Defendant's motion for judgment as a matter of law on Plaintiffs' fraud claim is whether there is enough evidence to support a finding of fraud based on communications to Mrs. Knight *other* than the Medication Guide. For the reasons below, the Court answers that question in the affirmative.

### C. Whether There Were Other Communications to Mrs. Knight

Based on the evidence in the record, the Court finds that Defendant's communication to Mrs. Knight via the physician's label can support a finding of fraud. Defendant, however, disagrees, and argues that the physician label alone cannot support a finding of fraud for three reasons. First, neither Mrs. Knight, nor her children, read the physician label, and therefore they could not have relied on it. *See Mem. in Supp. of Mot. for J. as a Matter of Law*, at 22. Second, the jury already found that Defendant's physician label adequately warned of the medicine's risks. *See id.* at 22–23. Third, and finally, any fraud claim premised on the physician label is also preempted. *See id.* at 23.

The Court finds that Defendant's first argument lacks merit. While it may be undisputed that neither Mrs. Knight nor her children read the physician label, Plaintiffs' were not required to prove these facts in order to establish the element of reliance. While Defendant argues that *In re Zyprexa Prod. Liab. Litig.*[3] stands for the proposition that, in West Virginia, failure to read a physician label or warning must result in a failure to prove reliance, Defendant's interpretation of the case is improperly narrow. It is true that the district court in *Zyprexa* found no evidence of

---
[3] No. 04-MD-1596, 2009 WL 1514628, at *12 (E.D.N.Y. June 1, 2009).

reliance because there was no evidence that the consumer read the warning. *In re Zyprexa Prod. Liab. Litig.*, 2009 WL 1514628, at *12. However, the consumer in that case also argued a reliance theory based upon the indirect reliance of his *doctor's* reading of the relevant warning—the same theory Plaintiffs offer in this case. *See id.* The district court explicitly rejected this theory, but *not* because the consumer did not read the label himself. *See id.* Rather, the district court rejected the theory "because there [was] no evidence that [the doctor] even knew [the consumer] was taking" the drug during the relevant time period. *See id.* Thus, the district court explicitly considered the indirect reliance theory that Plaintiffs in this case have offered, yet did not reject the theory for the reasons Defendant argues this Court must. Therefore, Defendant has cited no support for the proposition that to prove reliance on a warning in West Virginia a plaintiff must prove that it read the warning firsthand. Additionally, because there was evidence that medical professionals reviewed the physician label as they consulted with Mrs. Knight, Defendant's reliance argument must be rejected.

As to Defendant's second argument—that the physician label alone cannot support a finding of fraud because the jury *already found* that Defendant's physician label adequately warned of the medicine's risks—the Court finds this position illogical. While Defendant also requests a new trial based on an allegedly inconsistent verdict, it essentially argues here that the Court, in the alternative, should simply resolve the inconsistency in its favor and apply the jury's findings on all other claims to the fraud claim. However, such a decision would be entirely random, as no evidence suggests that the inconsistency should be resolved in Defendant's favor, as opposed to Plaintiffs'.[4] Further, for the reasons stated below, any objection to an inconsistent verdict was waived.

---

[4] In fact, quite the opposite. A fraud claim requires a higher burden of proof than any of the other claims in this case, and the jury found in favor of Plaintiffs on their fraud claim. Thus, if this Court chose to resolve the

Defendant's last argument is that Plaintiffs' fraud claim must be preempted, but for different reasons than those stated earlier. The Court disagrees. As stated above, a claim against a defendant based on state law is preempted when the party cannot satisfy its state duties without the federal government's special permission and assistance. While this rule required the Court to preempt any claim against Defendant based on issues with the Medication Guide, a claim can still be brought against Defendant based on issues with the physician label. The Court reaches this conclusion because there *was* a mechanism for Defendant to satisfy its state duties via the physician label *without* the federal government's permission: through the "changes being effected" ("CBE") regulation. *See* 21 C.F.R. § 314.70(c)(6)(iii)(A). This CBE regulation allows a manufacturer to change its label unilaterally to "add or strengthen a contraindication, warning, precaution, or adverse reaction," on the basis of "newly acquired information."[5] *See id.*

Defendant argues that the CBE regulation cannot apply to this case because "Plaintiffs produced no evidence that, after the FDA approved Pradaxa in October 2010, BI had newly acquired information regarding the alleged need for blood plasma monitoring…." *See Mem. in Supp. of Mot. for J. as a Matter of Law*, at 23. This assertion is incorrect. Plaintiffs presented evidence at trial that after Pradaxa was on the market there were reports in the literature as well as exchanges between Defendant's agents about the advisability of testing or monitoring, especially with patients who have severe renal problems, based on new analyses.[6] In fact, Defendant even

---

inconsistency in the verdict by deferring to the jury's findings, as Defendant is suggesting, it would be nonsensical to hold that the jury's finding in favor of Defendant on a *lesser* burden of proof should alter its finding on a *higher* burden of proof.

[5] Important to note, "newly acquired information" includes "*new analyses of previously submitted data* (e.g., meta-analyses) if the studies, events, or analyses reveal risks of a different type or greater severity or frequency than previously included in submissions to FDA." 21 C.F.R. § 314.3(b) (emphasis added).

[6] *See, e.g.*, ECF No. 230-4, at 5 ("[l]ack of data leading to evidence based guidance for treatment of severe bleeding and treatment of acute stroke in patients treated with Pradaxa."); ECF No. 230-5 (emails between Defendant's agents stating that Defendant would suffer a "competitive disadvantage" if it recommended monitoring plasma concentrations); ECF No. 230-9, at 4 (an evaluation by Defendant stating that "an assessment of the risk of bleeds in a given patient should be based on the actual dabigatran concentration."); ECF No. 247-11, at 7–8 (Dr. Bruckmann

acknowledges that the "Reilly exposure-response paper was published after Pradaxa's approval," but argues that the paper is not "newly acquired information" because "that paper was based on the same RE-LY plasma concentration data provided to the FDA prior to approval." *See Mem. in Supp. of Mot. for J. as a Matter of Law*, at 24. However, this argument fails to recognize the clear rule that newly acquired information includes new analyses of *previously submitted data*.

Also worthy of note, Defendant had previously stated that it does not even disagree with the Court's conclusion on this issue. During trial, Defendant agreed that new analyses were done, and believed that whether there was "newly acquired information" is a fact that should indeed be decided by a jury:

> We have some new analysis that was done. There's no question about it. And I think there's probably a fact issue on whether there's newly acquired information or newly acquired analysis that warranted a change.

ECF No. 247-5, at 271.

The above facts demonstrate that Plaintiffs met their burden of showing that Defendant had newly acquired information, and therefore federal law does not preempt Plaintiffs' fraud claim. For this reason, and the reasons discussed previously, the Court denies Defendant's motion for judgment as a matter of law as to Plaintiffs' fraud claim.

**2. Motion for Judgment as a Matter of Law—Punitive Damages Claim**

Next, Defendant argues that it is also entitled to judgment as a matter of law on Plaintiffs' claim for punitive damages because "the jury's finding on punitive damages is against the greater weight of the evidence."[7] *See Mem. in Supp. of Mot. for J. as a Matter of Law*, at 25. The Court disagrees.

---

testifying that Defendant refused to published a scientific study due to fears that the study would alter the perception that Pradaxa patients did not require any lab testing or monitoring).

[7] Defendant also argues that it is entitled to judgment as a matter of law on Plaintiffs' claim for punitive

The jury was instructed that punitive damages can be awarded only where "you find by clear and convincing evidence that BI acted with actual malice toward Mrs. Knight or that BI acted with a conscious, reckless, and outrageous indifference to the health, safety, and welfare of others." ECF No. 225-1, at 9. There is sufficient evidence in the record to support a finding that Defendant acted with conscious, reckless, and outrageous indifference to the health, safety, and welfare of others. For example, the jury heard evidence from Defendant's witness, Dr. Bruckmann, that Defendant has an "obligation to limit any risk to a patient to the extent it is possible." *Dep. of Bruckmann*, ECF No. 247-11, at 14. However, the jury also heard evidence that "the company mantra with respect to Pradaxa, was '[n]o monitoring,'" and that the company wanted to "make sure that it stays this way." *See Dep. of Van Ryn*, ECF No. 247-12, at 8; *Dep. of Bruckmann*, at 8. Additionally, there was evidence that Defendant would not support scientific studies if those studies weakened their "no monitoring" mantra, even though the studies would potentially benefit the health, safety, and welfare of others. *See Dep. of Bruckmann*, at 7–8. Therefore, this evidence, combined with the evidence that supports a finding a fraud, could lead a reasonable juror to conclude that Defendant acted with a conscious, reckless, and outrageous indifference to the health, safety, and welfare of others when it failed to warn patients about the need to monitor blood plasma levels of Pradaxa. Thus, Defendant's motion for judgment as a matter of law on Plaintiffs' claim for punitive damages is denied.

**3. Motion for New Trial—All Claims**

Lastly, Defendant argues that, if this Court denies its motion for judgment as a matter of law, it is entitled to a new trial on all claims "because the jury delivered inconsistent verdicts on separate claims predicated on the same factual question." *See Mem. in Supp. of Mot. for J. as a*

---

damages "because the predicate liability finding cannot stand." *See Mem. in Supp. of Mot. for J. as a Matter of Law*, at 25. However, because the Court has already held that predicate liability for fraud exists, this argument is rejected.

*Matter of Law*, at 27. However, Plaintiffs argue that, regardless of whether the jury's verdict was inconsistent, Defendant waived its dispute "by failing to raise it prior to the jury being dismissed." *See Mem. in Opp. to Mot. for J. as a Matter of Law*, ECF No. 247, at 25. Because the Court finds that a general verdict form was used in this case, the Court agrees with Plaintiff.

Federal Rule of Civil Procedure 49(b), which involves "general" verdicts, requires a party to object to inconsistencies prior to the discharge of the jury. *See White v. Celotex Corp.*, 878 F.2d. 144, 146 (4th Cir. 1989). However, Federal Rule of Civil Procedure 49(a), which involves "special" verdicts, does *not* require a party to object to inconsistencies prior to the discharge of the jury. *See Ladnier v. Murray,* 769 F.2d 195, 198 (4th Cir. 1985). Thus, because Defendant did not object to any inconsistency prior to the jury's discharge, the key inquiry is whether the verdict in this case was a general verdict, or a special verdict.

A special verdict form exists when the jury issues a "special written finding on *each* issue of fact." *See* Fed. R. Civ. P. 49(a) (emphasis added). A general verdict form, on the other hand, exists when the jury issues a general finding for one party, and possibly, written findings on "*one or more* issues of fact." *See* Fed. R. Civ. P. 49(b) (emphasis added). Thus, "the theoretical distinction between general and special verdicts is that *general verdicts require the jury to apply the law to the facts*, and therefore require legal instruction, whereas special verdicts 'compel the jury to focus *exclusively* on its fact-finding role.'" *See Zhang v. American Gem Seafoods, Inc.*, 339 F.3d, 1020, 1031 (9th Cir. 2003) (emphasis added) (citing *Floyd v. Laws,* 929 F.2d 1390, 1395 (9th Cir. 1991)). As a result, "the key is not the number of questions on the verdict form, but whether the jury announces the ultimate *legal result of each claim*." *Id.* (emphasis added).

Given this distinction between special and general verdicts, it is clear that the verdict form used in this case was a general verdict form with interrogatories, and not a special verdict. The

verdict form in this case listed Plaintiffs' five claims in numbers one through five, and asked the jury to mark "YES" if "Plaintiffs have proven the elements of the claim as the Court instructed," and mark "NO" if the jury found "the elements of a claim have not been proven." *See Jury Verdict Form*. By listing *only* the claims—not the elements—and asking the jury to state whether all the elements of the claims were proven, the Court was plainly asking the jury to "apply the law to the facts" and announce the "legal result of each claim," rather than "focus exclusively on its fact-finding role."

The jury *would have* made findings on each issue of fact, or focused exclusively on its fact-finding role, if the verdict form listed *each element* of every claim and asked the jury to mark "yes" or "no" next to each element. *See Bristol Steel & Iron Works v. Bethlehem Steel Corp.*, 41. F.3d 182, 185 (4th Cir. 1994) (finding a special verdict form when the form was comprised of six yes or no questions asking whether *each element* of the single claim had been satisfied). However, because the *only* factual questions in the jury verdict form related to legal causation and damages, the verdict form was a general verdict form with interrogatories. *See White v. Celotex Corp.*, 878 F.2d 144, 145 (4th Cir. 1989) (holding that the verdict form issued to the jury was one under "49(b)" when it asked the jury the factual questions of whether the plaintiff had been "physically harmed by [his] condition" and whether "plaintiff incurred any damages which were proximately caused as a result of the harm.").

Defendant presents various arguments for why the verdict form in this case was not a general verdict, but a special verdict. *See Resp. in Opp. to Supp. Br.*, ECF No. 257, at 1. For example, Defendant argues that "[o]n its face, the verdict form required the jury to respond to specific *factual* questions on whether BI had committed the wrongful conduct alleged …." *Id.* at 2. This assertion is a mischaracterization of the questions and is simply erroneous. The line

between factual questions and legal questions may be subtle, but it is crucial: a legal question, unlike a factual question, requires a jury to *apply the law* to the facts. *See Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1329 (Fed. Cir. 2013). The question on the verdict form in this case asked whether Defendant committed "fraud," which necessarily required the jury to apply the law to the facts, as a jury could not know if Defendant committed fraud without the legal instruction of fraud. Thus, Defendant is incorrect that the verdict form asked "factual" questions on whether Defendant committed the wrongful conduct alleged.[8]

Defendant also asserts that "[n]othing in Rule 49(a) requires that a special verdict form include every conceivable factual issue submitted via written interrogatories." *See Resp. in Opp. to Supp. Br.*, at 3. However, this declaration is nothing more than a straw man argument. Plaintiffs are not claiming that Rule 49(a) requires a form to include *every conceivable* factual issue. Rather, 49(a) only requires a special written finding on *each issue of fact*, and each element of a claim in dispute is unquestionably an issue of fact. Thus, because the verdict form failed to list out all the elements of the fraud claim, the verdict form did not require written findings on *each* issue of fact.[9]

Finally, Defendant states that, "[e]ven if the Court finds that the jury's verdict does not fall neatly into the category of Rule 49(a), it should not treat this verdict as a Rule 49(b) verdict for the purposes of waiver." *See Resp. in Opp. to Supp. Br.*, at 4. The Court disagrees for two reasons. First, the Court does not merely find that the verdict is not "squarely captured by Rule 49(a) or 49(b)." *See id.* at 5. To the contrary, for the reasons stated above, the Court finds that the verdict

---

[8] Defendant also claims that, contrary to Plaintiffs' position, no "terminal question was asked." *See Resp. in Opp. to Supp. Br.*, at 3. The Court need not address this issue, because the phrase "terminal question" originated from the parties, seemingly without any legal support. The real inquiry is whether "the jury announces the ultimate *legal result of each claim*." It is undisputed that the jury stated "YES" when asked if the Plaintiffs had proven the elements of fraud. An announcement that Plaintiffs had proven fraud is clearly an announcement of the legal result of the fraud claim.

[9] The Court notes that, unsurprisingly, Defendant does not explain or address the clear distinction that Rule 49(a) requires a finding on "each" issue of fact, and Rule 49(b) allows for a finding on only "one or more" issues of fact.

form in this case "falls neatly" into, and is "squarely captured," by Rule 49(b). Second, the basis for allowing waiver in the context of a general verdict applies perfectly to this scenario. Because Defendant did not object to the inconsistent verdict before the jury was dismissed, the opportunity to cure was lost, *precisely* because there was no detailed special verdict to review. *See Function Media, L.L.C.*, 708. F.3d at 1330 ("While it may seem harsh, requiring objections to be made before the jury is dismissed is the only way to efficiently cure potential inconsistencies when there is not a detailed special verdict to review."); *Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514, 1520 (6th Cir. 1990) (holding that "the special verdict is viewed as bringing the jury determination 'into the open, where all can see what has been done.'"). Therefore, because Defendant did not object to the jury's seemingly inconsistent general verdict, the Court denies Defendant's Motion for a New Trial.

**IV. Conclusion**

Based upon the analysis provided above, the Court **DENIES** Defendant's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial. ECF No. 225.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: May 15, 2019

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE